UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**SIERRA CLUB,**                   )
                                   )
               **Plaintiff,** )
                                   )
               **v.**        )    Civil Case No. 12–1852
                                   )
**TENNESSEE VALLEY AUTHORITY,**    )
                                   )
               **Defendant.** )
                                   )
_____)

## MEMORANDUM OPINION

### I. INTRODUCTION

Now before the Court is plaintiff's Motion for a Preliminary Injunction. ECF No. 3. Upon consideration of this Motion, defendant's opposition, ECF No. 9, plaintiff's reply, ECF No. 14, and applicable law, this Court will DENY plaintiff's motion and, because it lacks personal jurisdiction over defendant, will TRANSFER the case to the Eastern District of Tennessee.

### II. BACKGROUND[1]

Between April and June 2012, Sierra Club filed several FOIA requests with the Tennessee Valley Authority ("TVA")[2] seeking information regarding a Tennessee coal plant as well as other more general information. Compl. ¶¶ 30, 34–36, ECF No. 1; Pl.'s Mem. in Support

---

[1] Because the Court finds that it lacks personal jurisdiction over this lawsuit, this opinion provides only a brief summary of the relevant background.

[2] The TVA is a "wholly owned Federal corporation whose 'business . . . as defined by statute, is the development of the natural resources of the Tennessee Valley and adjacent and related areas.'" Def.'s Opp'n at 5 (citing *Fehlhaber Pile Co. v. TVA,*, 155 F.2d 864, 865 (D.C. Cir. 1946), *superseded by state statute on other grounds, as noted in Jenkins v. Wash. Convention Ctr.*, 236 F.3d 6 (D.C. Cir. 2001); *see also* Compl. ¶ 17 ("Defendant TVA is a federal corporation . . . [which] provides the vast bulk of electric power to" Tennessee and a "larger seven-state service region.").

of its Emergency Mot. For Prelim. Inj. at 11–12 ("Pl.'s Br.") ECF No. 3–1; Def.'s Opp'n at 2, ECF No. 9. In October, the TVA issued a draft Environmental Assessment ("EA") regarding its plans for the plant. Compl. ¶ 31; Pl.'s Br. at 2, 13–14. The TVA announced a public comment period for the draft EA that was initially to be open until November 16 and was later extended until the present deadline of November 30. Compl. ¶¶ 43, 46. The Club quickly sought to expedite its still pending requests. Compl. ¶ 45; Pl.'s Br. at 3, 14; Def.'s Opp'n at 3. In early November, the Sierra Club received what TVA described as its "partial response." Compl. ¶ 47; Pl.'s Br. at 3, 15; Def.'s Opp'n at 3 (noting that TVA sent the CD on November 5). Not satisfied with the documents they had received, and with the public comment period's November 30 closing date looming, the Club filed this action on November 15 and on the same day moved for a preliminary injunction. *See* Compl.; Pl.'s Emergency Mot., ECF No. 3. The Club seeks an order forcing TVA to turn over all requested documents or, if necessary, to extend or re-open the comment period. Pl.'s Br. at 4, 17; Pl.'s Reply at 4.

## III. ANALYSIS

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 21 (2008). Here the Court will not decide whether Sierra Club meets this demanding standard because it concludes that it lacks personal jurisdiction over TVA.

Far from a "hyper-technical procedural argument," *see* Pl.'s Reply at 3, personal jurisdiction is "an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication." *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotations and citations omitted). "[B]efore a court may exercise personal jurisdiction over a defendant, there must be . . . a basis for the defendant's amenability to service

of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). This requirement applies with no less force in the context of a motion for a preliminary injunction. *See Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 25 (D.D.C. 2012); *cf. Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257 (11th Cir. 1988) (holding that a district court could not dismiss a case for lack of personal jurisdiction on its own motion without giving plaintiff notice or an opportunity to present its views on the issue).

The Sierra Club pursues two arguments for personal jurisdiction, pointing first to 5 U.S.C. § 552(a)(4)(B) of FOIA, Compl. ¶ 14; Pl.'s Reply at 20–22, and second to TVA's contacts with and presence in the forum and its status as a federal agency. *Id.* at 22–23; *see also* Compl. ¶ 15 (arguing that this venue is appropriate because TVA has an office here). As discussed below, neither avenue leads to personal jurisdiction.

**A. FOIA Does Not Provide This Court with Personal Jurisdiction Over TVA**

In 1974, Congress amended FOIA in two relevant respects. *See* Pub. L. No. 93–502, 88 Stat. 1561 (Nov. 21, 1974). First, through the provision now codified at 5 U.S.C. § 552(a)(4)(B), Congress made this district a proper forum for venue purposes. The subsection provides, in part:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). Second, Congress made it clear that "Government corporations [and] Government controlled corporations," such as TVA, are subject to FOIA. *See* § 552(f)(1).

Three judges on this court have addressed the question of whether § 552(a)(4)(B) provides personal jurisdiction over TVA in this district, and have reached opposing conclusions.

*Compare Jones v. U.S. Nuclear Regulatory Comm'n,* 654 F. Supp. 130 (D.D.C. 1987) (Hens Green, J.) (finding § 552(a)(4)(B) did not confer personal jurisdiction over TVA), *with Murphy v. TVA,* 559 F. Supp. 58 (D.D.C. 1983) (Richey, J.) (finding the opposite), *and E. Tenn. Research Corp. v. TVA*, 416 F. Supp. 988 (D.D.C.) (Sirica, J.) (same) *vacated on other grounds*, 424 F. Supp. 1329 (D.D.C. 1976); *see also* 2 Dep't of Justice, Guide to the Freedom of Information Act § 3–17.100B (2012) ("[E]ven though the District Court for the District of Columbia is the 'universal' venue for FOIA lawsuits, it is not settled whether the Tennessee Valley Authority is amenable to FOIA suit in Washington, D.C. or only in the Northern District of Alabama (the venue set by statute for that wholly owned government corporation)."[3] (internal citations omitted)).

This Court concludes that § 552(a)(4)(B) does not allow the Sierra Club to pursue their FOIA claim against the TVA in this Court. Pl.'s Reply at 20. Because neither the provision's plain language nor its legislative history provide conclusive evidence as to what Congress intended on this issue, the Court falls back on the presumption that a court's process is only valid within its district.

**1. The Plain Language of the Provision is Ambiguous**

Subsection 552(a)(4)(B) provides in part that "the district court . . . in the District of Columbia . . . has jurisdiction . . ." over FOIA cases. The Sierra Club points to the word "jurisdiction" and concludes that this "plain language" gives this Court personal jurisdiction over TVA. Pl.'s Reply at 20. This is incorrect. Congress could have used the term "jurisdiction" to refer to (a) subject matter jurisdiction and not personal jurisdiction; (b) personal jurisdiction and not subject matter jurisdiction; (c) both personal and subject matter jurisdiction; or (d) neither

---

[3] *But see TVA v. Tenn. Elec. Power Co.,* 90 F.2d 885, 889 (6th Cir. 1937) (finding that the TVA statute does not prohibit venue in the Eastern District of Tennessee).

personal nor subject matter jurisdiction in the technical legal sense of those terms.[4] The Sierra Club has offered no textual or logical support for its conclusion that either one of the possible readings that include personal jurisdiction—(b) or (c)—is the best reading.

Judge Richey attempted to mount such an argument in *Murphy* by suggesting that "[t]he question of venue only arises once it has been determined that personal jurisdiction lies" and because the provision conferred venue, it must also confer personal jurisdiction. 559 F. Supp. at 59. However, as Judge Joyce Hens Green correctly noted in *Jones*, this syllogism is faulty—"the presence of venue does not dispense with the necessity for service in order to acquire personal jurisdiction." 654 F. Supp. at 132 (quoting *Rabiolo v. Weinstein*, 357 F.2d 167, 168 (7th Cir. 1966)). Other venue-conferring statutes have similarly been held not to confer personal jurisdiction. *See Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 622 (1925).

Accordingly, plain meaning fails to resolve the issue.

**2. The Legislative History of the Provision is Also Ambiguous**

Subsection 552(a)(4)(B) was enacted at the same time as a provision clarifying that FOIA applied to "Government corporations [and] Government controlled corporations," such as TVA. *See* § 552(f)(1). The Sierra Club argues that this simultaneous enactment means that Congress "knew what [it] was doing"—i.e. "giv[ing] plaintiffs in FOIA suits against the TVA the right to sue in this district court." Pl.'s Reply at 21 (quoting *E. Tenn. Research Corp.*, 416 F. Supp. at 990). Because "Congress passed the Amendments as one package, discussing both changes in a single conference report," the Club argues, Congress must have intended that § 552(a)(4)(B) would provide personal jurisdiction over the TVA. Pl.'s Reply at 21–22 (citing S. Conf. Rep.

---

[4] It should be noted that, although the provision does not use the word "venue," there appears to be universal agreement that it makes venue appropriate in any of the four listed fora. *See, e.g., In re Scott,* 709 F.2d 717, 722 (D.C. Cir. 1983) (examining § 552(a)(4)(B) and concluding that "Congress expressly established the District of Columbia as a place of proper venue in all FOIA cases"); *see also* 2 Dep't of Justice, Guide to the Freedom of Information Act § 3–17.100B (2012) (referring to this provision as the "venue provision of the FOIA" and collecting cases).

93–1200, 1974 USCCAN 6285, 6287, 6293 (Oct. 1, 1974)); *see also Murphy*, 559 F. Supp. at 59 (finding simultaneous enactment created a "strong presumption" that Congress intended TVA to be suable in the D.C. Court).

This Court disagrees. Simultaneous enactment, without more, does not imply that Congress intended the TVA to be subject to personal jurisdiction in D.C. It is notable that "the two amendments originated in different houses of Congress," as Judge Joyce Hens Green pointed out. *Jones*, 654 F. Supp. at 132. And, at the time of enactment in 1974, Congress may have been aware that courts had already found in a different but related context that the TVA was not subject to the same extraterritorial service of process as ordinary agencies. *See NRDC v. TVA*, 459 F.2d 255, 257 (2d Cir. 1972) (holding that the federal venue statute which specifically authorizes extraterritorial service on federal agencies in mandamus actions was inapplicable to the TVA); *Envtl. Def. Fund v. TVA*, 71–cv–1615 (D.D.C. Oct. 13, 1971) (same); *see also Jones*, 654 F. Supp. at 131–32.[5] Given that there is "nothing at all about service of process or personal jurisdiction" in the provision at issue here, it seems "just as likely" that Congress enacted the two provisions at the same time without contemplating the thorny issue now presented. *See id.*

Judge Sirica, who found personal jurisdiction over TVA under the provision, also acknowledged a fundamental ambiguity in the provision's purpose when made to apply to the TVA. *E. Tenn. Research Corp.*, 16 F. Supp. at 990. Congress wanted to allow plaintiffs to bring suits in the D.C. District Court, he concluded, because of the court's substantial expertise on FOIA matters as well as to promote convenience for the D.C.-based Department of Justice

---

[5] Judge Joyce Hens Green points to several statements drawn from the legislative history of a later amendment to the federal venue statute, suggesting that Congress agreed with these courts that the TVA was subject to "restricted" or "limited" service of process, compared with federal agencies. *Id.* (citing 122 Cong. Rec. 33,454 (1976) (remark of Sen. Kennedy); H.R. Rep. No. 1656, 94th Cong., 2d Sess. 3, 18 (1976)). However, the Court does not make much of this evidence as it comes after the enactment of the provision at issue here and pertains to an entirely different statute.

attorneys handling the cases for the government. *Id.* at 989 (citing S. Rep. No. 854, 93d Cong., 2d Sess., 12–13 (1974)); *see also In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) (articulating the same two reasons). But he noted the second reason "loses all its force" when TVA is a defendant, since "the corporation neither is represented by nor confers with the Justice Department on FOIA matters" and "the TVA's own attorneys in Knoxville, Tennessee, do this work." *E. Tenn. Research Corp.*, 16 F. Supp. at 989.

Accordingly, the Court concludes that legislative history does not provide a conclusive resolution to the interpretive question here.

### 3. Finding No Indication of Congressional Intent, The Court Falls Back on the Presumption that a Court's Process is Valid Only In the District Within Which it Sits

Lacking clear guidance from Congress, this Court falls back on the "widespread understanding that federal courts may serve process nationwide only when a federal statute authorizes such service." *Omni Capital,* 484 U.S. at 110 n.12; *see also Georgia v. Penn. R.R. Co.*, 324 U.S. 439, 467 (1945) ("Apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial."); *accord United States v. Hill*, 694 F.2d 258, 261 (D.C. Cir. 1982). "To assess the propriety of the District Court's exercise of enforcement jurisdiction on the basis of extraterritorial service of process, therefore, we must determine whether Congress has created a 'specific exception' to the usual rule." *Id.*

In *Omni Capital* the Supreme Court found that the Commodities Exchange Act did not contain an "implied provision for nationwide service of process in a private cause of action," and held that courts should not invent such provisions in the face of Congressional silence.[6] 484 U.S. at 108. The Court noted that federal courts should not expand their own powers of service

---

[6] Congress subsequently amended the statute to allow for nationwide service of process. *See* Futures Trading Practices Act of 1992 § 211, Pub. L. No. 102–546 (1992)*; see also In re Amaranth Natural Gas Commodities Litig.,* 587 F. Supp. 2d 513, 526 n.69 (S.D.N.Y. 2008).

7

Case 3:12-cv-00622   Document 20   Filed 11/29/12   Page 7 of 11   PageID #: 399

without clear guidance from Congress because "it seems likely that Congress has been acting on the assumption that federal courts cannot add to the scope of service of summons Congress has authorized." *Id.* (collecting cases). And, in the early case of *Robertson v. Railroad Labor Bd.*, the Supreme Court held that a "congressional grant of nationwide venue did not carry with it an implicit grant of nationwide service of process" because "[i]t is not lightly to be assumed that Congress intended to depart from a long established policy." 268 U.S. at 622; *see also Jones*, 654 F. Supp. at 132.

These principles tip the balance in this case. Neither the plain meaning nor the legislative history of the provision provide sufficient evidence that Congress intended to allow extraterritorial service of process. This Court will not do Congress' work for them. Accordingly, § 552(a)(4)(B) does not give the Court personal jurisdiction over TVA.

### B. Neither TVA's Contacts with, nor its Presence In the Forum, nor its Status as a Federal Agency Give This Court Personal Jurisdiction

The Sierra Club argues that "TVA's federal affairs office here in the District serves as another basis for jurisdiction." Pl.'s Reply at 22. Again, the Court disagrees.

"Under the District of Columbia's long-arm statute, local courts may exercise so-called 'specific jurisdiction' over a person for claims that arise from the person's 'transacting any business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (citing D.C. Code § 13–423(a)(1)). However, the Sierra Club's FOIA claim against TVA does not arise out of any business transacted between the parties in the District so this font of jurisdiction is unavailable. *See id.*

D.C. law also permits courts to exercise "general jurisdiction" over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is "doing business" in the District. *See Gorman*, 293 F.3d at 509 (D.C. Cir. 2002) (citing D.C.Code § 13–

8
Case 3:12-cv-00622   Document 20   Filed 11/29/12   Page 8 of 11   PageID #: 400

334(a)). The D.C. Court of Appeals has indicated that the reach of "doing business" jurisdiction under § 13–334(a) is coextensive with the reach of constitutional due process. *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985). However, D.C. Courts have long carved out a "government contacts" exception for alien corporations which keep an office in the District for the purpose of maintaining contact with Congress and governmental agencies. *See, e.g.*, *Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87, 88–89 (D.C. Cir. 1965); *Morgan v. Richmond Sch. Of Health and Tech., Inc.*, 857 F. Supp. 2d 104, 107–09 (D.D.C. 2012); *Lex Tex Ltd. V. Skillman*, 579 A.2d 244, 246–47 (D.C. 1990). As the D.C. Circuit reasoned, "Washington presents many business organizations with special needs for a continuous and ponderable physical presence here," but such presence should not be made "in every case a base for the assertion of personal jurisdiction." *Fandel*, 345 F.2d at 89.

The Sierra Club argues that "[t]he continued staff presence which TVA maintains in [its local D.C.] office, and its continuous and deep involvement with this District—hiring and paying staff, communicating with citizens and officials here and advocating for TVA's interests" should lead this Court to find jurisdiction. Pl.'s Reply at 22–23. Further, they argue, the "government contacts" is "inapposite" in this case, which involves a federal defendant, not a private corporation, and a federal cause of action, not a private lawsuit. Pl.'s Reply at 23 nn.14 & 15.

This Court disagrees. The TVA's D.C. office has "a staff of four that obtains information concerning matters affecting TVA, circulates information about TVA to Federal Government officials and the public, and arranges meetings between TVA officers and officials of other Federal Government agencies." Def.'s Opp'n at 6 (citing Declaration of Katherine J. Black at P 2, ECF No. 12). This office fits squarely into the government contacts exception, and prevents this Court from finding personal jurisdiction.

9

It is true, as the Sierra Club notes, that TVA is not wholly like the private corporations at issue in previous government contacts exception cases in that its "Board is appointed by the President . . . which is subject to continued Congressional oversight." *See* Pl.'s Reply at 23 n.14. But neither is it wholly like an ordinary agency. *See NRDC*, 459 F.2d at 257 (noting that the TVA "operates in much the same way as an ordinary business corporation, under the control of its directors in Tennessee, and not under that of a cabinet officer or independent agency headquartered in Washington"); *see also Fehlhaber Pile Co. v. TVA*, 155 F.2d 864, 865 (D.C. Cir. 1946) (finding that the TVA was "clearly not domestic to the District of Columbia" and their D.C.-based federal affairs office did not "constitute[] the doing of business in the District of Columbia in the jurisdictional sense"). This Court holds that the TVA has enough of the qualities of a private corporation to qualify for the governmental contacts exception—an exception which, in this case, applies to keep this Court from finding personal jurisdiction.

It is also true that the FOIA cause of action here is unlike the tort and contract disputes in previous government contacts exception cases, but the Sierra Club does not adequately explain, and this Court does not see any reason why this distinction should make a difference in the applicability of this exception.

In sum, this Court lacks personal jurisdiction over TVA.

## IV.  TRANSFER

The Sierra Club requested that if this Court found a lack of personal jurisdiction it should transfer the case to the Middle District of Tennessee, where the power plant in question is located, and where "many citizens who will be affected by it . . . reside." Pl.'s Reply at 24.

"Transfer is appropriate under 28 U.S.C. § 1406(a) when procedural obstacles [such as lack of personal jurisdiction] impede an expeditious and orderly adjudication . . . on the merits."

*Morgan*, 857 F. Supp. 2d at 110 (internal citations and quotations omitted). "A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex*, 722 F.2d at 789. Transfer of a case is usually preferable to dismissal. *Jones v. United States*, 820 F. Supp. 2d 58, 61 (D.D.C. 2011).

While the TVA Act provides that it "shall be held to be an inhabitant and resident of the northern judicial district of Alabama within the meaning of the laws of the United States relating to the venue of civil suits," 16 U.S.C. § 831g(a), the Sixth Circuit has found that this does not prohibit venue in the Eastern District of Tennessee. *TVA v. Tenn. Elec. Power Co.*, 90 F.2d 885, 889 (6th Cir. 1937). According to TVA's Vice President of Human Resources, "TVA's Freedom of Information Officer works in TVA's corporate headquarters in Knoxville, Tennessee" and "[t]he majority of personnel whose work involves environmental compliance and the installation of pollution controls are based in TVA's office in Chattanooga, Tennessee." Declaration of Katherine J. Black ¶ 3, ECF No. 12. Accordingly, the Court finds that transfer to the Eastern District of Tennessee is appropriate.

## V. CONCLUSION

For the reasons set forth above, the Sierra Club's Motion for a Preliminary Injunction is DENIED, and the case shall be TRANSFERRED to the Eastern District of Tennessee. An Order will issue with this opinion.

Signed November 29, 2012 by Royce C. Lamberth, Chief Judge.